UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jane M. Helms, ) | Civil Action No.: 4:21-cv-01875-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Hilton Resort Corp. d/b/a Hilton ) | |
| Grand Vacations and Hilton Grand ) | |
| Vacations, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This employment case was initially filed in the Court of Common Pleas for Horry County, South Carolina. Plaintiff Jane M. Helms ("Plaintiff") alleges claims for age discrimination, retaliation, and hostile work environment in violation of the Age Discrimination in Employment Act[1] ("ADEA"); national origin discrimination, sex discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964[2] ("Title VII"); discrimination, retaliation, and hostile work environment in violation of the Americans with Disabilities Act[3] ("ADA"); and a violation of the South Carolina Payment of Wages Act[4] ("SCPWA"). Defendant Hilton Resort Corp. d/b/a Hilton Grand Vacations and Hilton Grand Vacations, LLC ("Defendant")[5] removed the case to this Court.

Pending before the Court is Defendant's [ECF No. 51] motion for summary judgment. This

---

[1]     29 U.S.C. § 621, *et seq*.

[2]     42 U.S.C. § 2000e, *et. seq*.

[3]     42 U.S.C. § 12101, *et. seq*.

[4]     S.C. Code Ann. § 41-10-10, *et seq*.

[5]     With Defendant's consent, Plaintiff filed an amended complaint correcting the name of Defendant to Hilton Resort Corp. d/b/a Hilton Grand Vacations and Hilton Grand Vacations, LLC. ECF No. 11.

matter is before the Court with the Report and Recommendation ("R&R") [ECF No. 66] of United States Magistrate Judge Kaymani D. West.[6] The Magistrate Judge recommends granting Defendant's motion for summary judgment as to Plaintiff's Title VII, ADEA, and ADA causes of action; declining to exercise jurisdiction over Plaintiff's state law claim; and remanding the state law claim to the Court of Common Pleas for Horry County. ECF No. 66. Plaintiff and Defendant filed objections to the R&R, and Defendant filed a reply to Plaintiff's objections. ECF Nos. 67, 69, & 70.

## Legal Standards

### I. Review of the R&R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id*. However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th

---

[6]    This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and Local Civil Rule 73.02(B)(2)(g).

Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record ...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## **Factual Background**[7]

Plaintiff, a white female over the age of forty, was employed as a Sales Executive on the Action Line at Defendant's Ocean Enclave property in Myrtle Beach, South Carolina. As an Action Line Sales Executive ("Sales Executive"),[8] Plaintiff took potential new customers on a tour of the facility before referring any customer who wanted to purchase a timeshare to a Sales Leader. Defendant maintains records of sales performance based on two metrics: (1) volume per guest ("VPG"), which is the amount of volume measured in dollars a Sales Executive sold divided by the number of prospects the Sales Executive saw, and (2) net closing percentage, which is the number of sales made divided by the number of customers the Sales Executive took on tours.

On March 19, 2020, Ocean Enclave closed as a result of COVID-19. Defendant tasked local management teams with developing plans for a phased return to work and later a selection process for those who would be terminated as part of a nationwide reduction in force ("RIF"). Defendant's Vice President of Sales for South Carolina, Mike Riley, worked with Ocean Enclave's local management, which consisted of Roger Gorby, John Gibbs, and Woody Dellis, to develop this plan. They decided the most appropriate metric for ranking and returning the Sales Executives at Ocean Enclave would be net closing percentage.

Defendant determined how many employees to return at a given time using market forecasts. When Ocean Enclave reopened approximately two weeks after closing, Defendant ranked Sales

---

[7] The Court briefly summarizes the facts here. A full summary with citations to the record is contained in the R&R at ECF No. 66.

[8] Defendant also employs In-House Sales Executives that sell to Defendant's existing customers. For purposes of this Order, "Sales Executive" refers to an Action Line Sales Executive unless otherwise indicated.

Executives based on net closing percentage over the previous six months to determine which Sales Executives to return.[9] In the first phase, the top seventeen Sales Executives were returned and the remaining fifty-three Sales Executives were furloughed. The lookback period was expanded to twelve months for subsequent phases of return and the eventual RIF. The second phase of employees returned approximately forty-five days after the first phase.

In a text exchange from August 21-22, 2020, Gibbs responded to Plaintiff's inquiries and stated VPG was the benchmark for returns. In his deposition, Gibbs indicated he mispoke in that instance because management had gone back and forth about what metric to use before ultimately deciding to use net closing performance. On August 23, 2020, Plaintiff and her husband emailed "Hilton Team Member Relations/At Your Service" questioning the order in which Sales Executives were being returned from furlough. Plaintiff noted she was aware of employees with lower VPGs who were returned and asked Defendant to "help us understand why we are being treated differently as we feel as though because the new management staff did not hire us, they are looking for a reason not to allow us to return and not giving us sufficient information as to the WHY." ECF no. 56-25 at p. 3.

Plaintiff's husband was returned to work on September 2, 2020. On September 23, 2020, Plaintiff's counsel informed Riley that unless Defendant responded to Plaintiff's claims, Plaintiff would file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2020. On October 6, 2020, Plaintiff filed the charge of discrimination with the EEOC alleging discrimination based on sex, national origin, age, and disability. By letter dated

---

[9] The decision to rank employees using a six-month lookback of net closing percentage was made at some point on or before March 26, 2020. *See* ECF No. 51-5 at p. 41.

October 16, 2020, Defendant notified Plaintiff that her employment would be terminated effective October 31, 2020, as a part of a nationwide RIF that would impact approximately 1,600 of Defendant's employees. On October 23, 2020, Plaintiff signed a second charge of discrimination with the EEOC alleging retaliatory termination. Plaintiff received a Right-to-Sue letter from the EEOC on March 26, 2021. This litigation followed.

## Discussion

### I. Federal Claims

#### A. Discrimination

Plaintiff claims she was discriminated against on the basis of age, sex, national origin, and disability when she was not returned to work and she was eventually terminated. The Magistrate Judge recommended granting summary judgment on these claims after concluding Defendant failed to establish a prima facie case of discrimination in each instance. ECF No. 66. The Magistrate Judge further noted that even assuming *arguendo* that Plaintiff has satisfied her prima facie case, Plaintiff has not established pretext. *Id*.

As the R&R correctly notes, the Court analyzes discrimination claims based on circumstantial evidence using the burden-shifting framework established by *McDonnell Douglas Corp. V. Green*, 411 U.S. 792 (1973). ECF No. 66 at p. 14; *see*, e.g. *Bandy v. City of Salem, Virginia*, 59 F.4th 705, 712 n.3 (4th Cir. 2023) (noting the burden shifting framework from *McDonnell* is applied to ADEA claims). Without objection, the R&R considered a prima facie case of discrimination in a RIF context, which provides Plaintiff must show (1) she was a member of a protected class; (2) she was selected for discharge from a larger group of candidates; (3) she was performing at a level substantially equivalent to the lowest level of those of the group retained; and

(4) the process of selection produced a residual work force including some persons in the group who were outside the protected class and who were performing at a level lower than that at which she was performing. *See Corti v. Storage Tech. Corp*. 304 F.3d 336, 340 n.6 (4th Cir. 2002); ECF No. 66 at pp. 19–20. In the ADEA context, "the fourth element is satisfied with proof of replacement by a substantially younger worker–not proof of replacement by someone entirely outside the ADEA's protected class." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, (4th Cir. 2002). If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Id*. Plaintiff then bears the burden of proving she has been the victim of intentional discrimination, which may be done by showing that Defendant's proffered explanation is unworthy of credence, thus supporting an inference of discrimination, or offer other forms of circumstantial evidence sufficiently probative of intentional discrimination. *Id*.

The Magistrate Judge found Plaintiff did not establish a prima facie case of discrimination under the ADEA or Title VII because Defendant set forth undisputed evidence that it consistently applied the same neutral metrics—ranking Sales Executives based on net closing percentage over a specified lookback period—and Plaintiff set forth no evidence from which an inference of discrimination could be made. ECF No. 66 at p. 23. The R&R also noted Plaintiff conflated the six-month and twelve-month lookback rankings, and found that "when considering the appropriate spreadsheet no sales executive with net closing percentages lower than Plaintiff was recalled from furlough (six-month lookback list) or later returned to work (12-month lookback list)." ECF No. 66 at p. 22.

The R&R went on to find even assuming *arguendo* Plaintiff established a prima facie case of

7

discrimination, Plaintiff did not establish pretext. ECF No. 66 at p. 23–26. Although Plaintiff argued Defendant did not apply the metrics across the board but granted exceptions and brought back who they wanted, the Magistrate Judge found Defendant presented cogent business reasons for using the net closing percentage and for extending to a twelve-month lookback period and it applied those metrics across the board. ECF No. 66 at p. 25. The Magistrate Judge addressed Plaintiff's focus on the August 21-22, 2020 text message exchange with her and Gibbs in which he told Plaintiff VPG was used. The Magistrate Judge found that Gibbs' statement was a misstatement and was sent after Defendant had determined net closing percentage would be utilized and after Defendant had already made the initial return decision and subsequent return decisions based on net closing percentage.[10] ECF No. 66 at p. 25.

The crux of Plaintiff's objections to the Magistrate Judge's recommendation to grant summary judgment on Plaintiff's discrimination claims is that a factual dispute exists surrounding Defendant's decision to use net closing percentages. ECF No. 67. Plaintiff argues that decision was made in order to discriminate against her and the numbers could be manipulated or exceptions could be granted so that management could choose who returned.[11] ECF No. 67.

---

[10] Most of the Magistrate Judge's discussion of the prima facie case of discrimination and pretext is found in the section of the R&R dealing with Plaintiff's ADEA claim. However, the Magistrate Judge applied the same reasoning to Plaintiff's claims of sex and national origin discrimination under Title VII. *See* ECF No. 66 at p. 27.

[11] Plaintiff did not object to the Magistrate Judge's findings that there was no inference of discrimination related to Plaintiff's claims of national origin discrimination based on Plaintiff's belief Gibbs discriminated against those who were not of Middle-Eastern descent or Plaintiff's claims of sex discrimination Plaintiff attributed to Kumar. *See* ECF No. 66 at pp. 27-28. All of Plaintiff's objections related to discrimination allege an inference of discrimination based on the use of net closing percentages. *See* ECF No. 67. Plaintiff also did not object to the Magistrate Judge's finding that Plaintiff has not shown an inference of discrimination based on any alleged "bumping." Finding no clear error, this Court adopts those findings. *See Diamond & Camby*, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error).

Plaintiff has not met the fourth element of showing "the process of selection produced a residual work force including some persons in the group who were outside the protected class and who were performing at a level lower than that which [s]he was performing." *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000) (ADEA); *Corti v. Storage Tech. Corp.*, 304 F.3d 336, 340 n.6 (4th Cir. 2002)(Title VII). Plaintiff ranked 33rd on the six-month lookback for the initial return based on a net closing percentage of 9.38%. *See* ECF No. 51-10 at p. 5. Everyone returned in the initial phase had a net closing percentage of 12% or higher.[12] *Id*. When the management team expanded the lookback period to twelve months for subsequent phases, Plaintiff's rank dropped to 45th based on a net closing percentage of 8.82%. *See* ECF No. 51-10 at p. 10. Everyone returned in the second phase had a net closing percentage of 11.11% or higher,[14] and although it is unclear how many employees were returned after the second phase, Plaintiff has not shown that based on the twelve-month lookback chart anyone with a net closing percentage lower than hers was returned to work in subsequent phases. *Id*.

Plaintiff takes issue with Defendant using net closing percentage instead of another metric such as VPG, but the decisions to use net closing percentage based on a six-month lookback for the initial return with an expansion to a twelve-month lookback for subsequent returns and RIF were legitimate business decisions that were used in a neutral manner. *See Marshall v. AT&T Mobility Servs., LLC*, No. 3:17-CV-1577-CMC, 2019 WL 1274723 at *4 (D.S.C. Mar. 20, 2019), aff'd, 811 F. App'x 849 (4th Cir. 2020)("It is in the employer's purview in implementing a RIF to analyze its

---

[12] This Court notes that twelve of the top seventeen Sales Executives who returned in the first phase were over the age of forty, seven were Plaintiff's age or older, fourteen were white, and five were female. *See* ECF No. 51-10 at p. 5. Two were white females that were Plaintiff's age or older. *Id*.

[14] This Court notes that of the fourteen Sales Executives returned in the second phase, all were white, eight were female, ten were over the age of forty, and seven were Plaintiff's age or older. *See* ECF No. 51-10 at p. 10. Four were white females that were Plaintiff's age or older. *Id*.

employees' performance and determine, without using any protected characteristic, who must be terminated."); *see also Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir. 2000) (the decision to discharge the plaintiff and retain other employees "is the kind of business decision that [courts] are reluctant to second-guess").

Facing an unprecedented pandemic, Defendant had to determine the best way to handle furlough of its employees and eventually a RIF. Defendant left those decisions to local management, and Allyson Meldeau, Defendant's Director of Team Member Relations, explained different metrics were used at different properties as a "direct result of business is different in each market, and they also reopened at different times." ECF No. 51-8 at p. 3. Although net closing percentage and VPG were used prior to the pandemic to evaluate the Sales Executives at the Myrtle Beach property, by around March 24, 2020, Riley and the local management decided that net closing percentage was the most appropriate metric in deciding which Sales Executives returned at that location because it accounted for the number of "yeses" (or actual sales), and they wanted to bring in as many new customers as possible. *See* ECF No. 56-7 at pp. 1-3; ECF No. 51-4 at pp. 20–21, 25, 34, 49; ECF No. 51-7 at pp. 20–21; ECF No. 51-3 at p. 31. For the first phase of employee return, management decided to use a six-month lookback of net closing percentages. To determine which employees to return in subsequent phases and for purposes of the eventual RIF, Defendant extended the lookback to twelve months to account for seasonal fluctuations and ensure the most consistent Sales Executives were returned. *See* ECF No. 51-4 at pp. 16, 22-23. Although Plaintiff would have preferred Defendant utilize VPG in ranking its employees, management's decision to use a six-month lookback of net closing percentages and the decision to expand the lookback to twelve months for subsequent phases were legitimate business decisions, and Plaintiff has not

offered any evidence that Defendant considered any protected traits—age, sex, or national origin—when it decided to utilize net closing percentage to determine which Sales Executives would return to work following the furlough.  Furthermore, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's adverse employment action."  *Dugan*, 293 F.3d at 722 (cleaned up).

Plaintiff contends management was able to interpret the numbers differently or grant exceptions to pick and choose who was returned to work, but there is no evidence to suggest such manipulation of the numbers occurred. Plaintiff also points to the decision to extend the lookback period as evidence of discrimination.  As accurately noted by the Magistrate Judge, Plaintiff's interpretation of the numbers that led to Plaintiff's belief employees were brought back out of order conflated the six-month and twelve-month lookback rankings.  ECF No. 66 at p. 21.  Furthermore, the decision to expand the lookback period to twelve months in order to account for seasonal fluctuations and to ensure the most consistent Sales Executives were returned was a legitimate business decision and Plaintiff has not shown this decision was  pretext for any discriminatory purpose.  ECF No. 51-4 at pp. 16, 22-23.  As previously noted, multiple employees of Plaintiff's age (or older), sex, and/or national origin who had higher net closing percentages were returned based on the six-month lookback for the first phase and the twelve-month lookback for subsequent phases.  Although there is no evidence of such, this Court also notes that "[e]ven if there is evidence that [Defendant] erroneously or even purposefully misapplied the RIF policy, it is not proof of unlawful discrimination. [Plaintiff's] assertions of discrimination in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for an adverse employment action." *Dugan*, 293 F.3d at 722.

Plaintiff's objections also contend the R&R cannot "utilize a mere mistatement to excuse the Defendants intentional discrimination against Plaintiff." ECF No. 67. Although not clear, this appears to relate to the R&R's findings regarding the text message exchange between Plaintiff and Gibbs on August 21-22, 2020, in which Gibbs stated VPG was the benchmark. However, this text message was received well after the determination to utilize net closing percentage was made and after that metric was used to create the rankings charts and return multiple phases of employees.[15] Furthermore, there is no evidence in the record that VPG or any other metric for ranking besides net closing percentage was ever actually used.[16]

Based on the foregoing, Plaintiff has not shown that any genuine issue of material fact exists and summary judgment is granted as to Plaintiff's claims of discrimination based on age, sex, and national origin.[17]

---

[15] On March 26, 2020, Riley sent an email indicating net close percentage would be used to rank Sales Executives. ECF No. 51-5 at p. 41. The data used to create the six-month lookback was last updated March 24, 2020. ECF No. 56-11 at p. 21. The data used to create the twelve-month lookback was last updated May 1, 2020. ECF No. 56-11 at p. 26.

[16] Plaintiff's objections argue the Magistrate Judge failed to consider that she was an exemplary employee and erred in finding Plaintiff failed to show she performed at the legitimate expectations of her employer. ECF No. 67. The Magistrate Judge outlined Defendant's argument that Plaintiff did not meet legitimate expectations, but the Magistrate Judge did not find Plaintiff did not meet those expectations and focused the analysis on there being no showing of an inference of discrimination. The Magistrate Judge also found that even assuming a prima facie case of discrimination was established, Plaintiff failed to show pretext. This Court agrees that even assuming Plaintiff was an exemplary employee that met Defendant's legitimate business expectations, Plaintiff would not establish discrimination. As such, this objection is overruled.

[17] The Magistrate Judge recommends granting summary judgment based on abandonment for any potential claims for (1) failure to hire, (2) discrimination based on disability in violation of the ADA, (3) discrimination based on age or sex that was not related to the furlough/return to work/RIF because Plaintiff did not address or pursue these claims in her response to Defendant's motion for summary judgment. *See* ECF No. 66 at pp. 11–12, 15–16, 28. Plaintiff has failed to object to these findings. As the court finds no clear error, summary judgment is appropriate for the reasons stated by the Magistrate Judge. *See Diamond & Camby*, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error); *see also Marshall v. AT&T Mobility Servs., LLC*, No. 3:17-CV-1577-CMC, 2019 WL 1274723, at *3 (D.S.C. Mar. 20, 2019), aff'd, 811 F. App'x 849 (4th Cir. 2020) (accepting the recommendation in the R&R that claims were abandoned for failure to address the claims in opposition to summary judgment, noting the plaintiff did not object to that recommendation, and granting summary judgment as to those claims).

**B. Retaliation**

Plaintiff also claims Defendant retaliated against her in violation of the ADEA, Title VII, and the ADA. The Magistrate Judge recommended granting summary judgment as to Plaintiff's retaliation claims. ECF No. 66 at pp. 29–32.

To establish a prima facie case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) a causal relationship exists between the protected activity and the adverse action. *Foster v. Univ. of Md. E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate nonretaliatory reason for the adverse action(s), and if Defendant does so, the burden returns to Plaintiff for her to prove that the reason offered was merely a pretext for unlawful retaliation. *Id*.

The Magistrate Judge found that of the complaints cited by Plaintiff, only Plaintiff's complaint concerning the failure to be returned to work could potentially be protected activity based on age, sex, national origin, or disability status. In her deposition, Plaintiff pointed to her conversations with Gibbs and to the letter dated August 23, 2020, from Plaintiff and her husband to Defendant. The Magistrate Judge noted nothing in Plaintiff's texts to Gibbs or the letter to Defendant complain that she was not being returned to work based on any protected characteristic, so those complaints were not protected activities for purposes of a establishing a retaliation claim under the ADEA, Title VII, or the ADA. The Magistrate Judge found Plaintiff did not provide any documents or testamentary evidence tying any other alleged internal complaints to any protected characteristic. ECF No. 66 at p. 29. The Magistrate Judge found Plaintiff's October 2020 EEOC Charge was protected activity and noted Plaintiff's counsel sent a letter to Riley on September 23,

2020, that included a copy of Plaintiff's EEOC charge that was later filed on October 6, 2020. That charge included allegations related to sex, national origin, age, and disability. ECF No. 56-1. However, the R&R noted the business decision to rank employees by net closing percentage based on a six-month lookback for the initial phase and a twelve-month lookback for subsequent phases was made well before any protected complaint and also before the text exchange with Gibbs and the August 2020 letter. Thus, the Magistrate Judge found there was no causal relationship to establish a prima facie case of retaliation. The Magistrate Judge went on to note that even assuming *arguendo* Plaintiff could establish a prima facie case, she could not demonstrate pretext because the business decisions regarding the use of net close percentage were legitimate.

Plaintiff objects to the Magistrate Judge's findings, arguing she presented her complaints in the proper chain of command and her termination following Defendant being made aware of her intent to file a charge of discrimination shows her termination could be in retaliation for her complaints with Defendant and the EEOC. ECF No. 67. She also argues her husband was only returned after she complained so Defendant could continue to discriminate against her and escape liability. *Id*.

Plaintiff's objections rehash her arguments made in opposition to summary judgment and do not explain how a business decision made in advance of any complaints could be considered retaliation for those complaints. Plaintiff also fails to point to any protected activity that occurred before those decisions were made. Plaintiff's claim regarding the return of her husband is conclusory and is not supported by the evidence. As such, any objections to the Magistrate Judge's recommendation regarding retaliation are overruled and summary judgment is granted as to those claims. *See Orpiano*, 687 F.2d at 47 (noting a court need not conduct a de novo review when a

party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error" in the R&R); *Gilmore v. Berryhill*, No. 5:18-cv-0044-RBH, 2019 WL 1427352 at *2 (D.S.C. Mar. 29, 2019) ("[O]bjections that merely rehash arguments previously raised and considered by the Magistrate Judge are insufficient to direct the Court to a specific error.")

### C. Hostile Work Environment

Plaintiff also claimed she was subjected to a hostile work environment in violation of the ADEA, Title VII, and the ADA. The Magistrate Judge recommended granting summary judgment as to these claims because Plaintiff did not set out evidence of any conduct so severe or pervasive so as to impact Plaintiff's terms of employment. *See Harris v. Forklift Sys., Inc*., 510 U.S. 17, 22 (1993) (finding a hostile work evironment exists "[w]hen the workplace is permeated with discriminatory inttimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.").

Plaintiff did not specifically object to this recommendation, and having found no clear error, the Court adopts that finding and summary judgment is granted as to Plaintiff's hostile work environment claims.  *See Diamond & Camby*, *supra* (recognizing a district court can adopt an unobjected-to recommendation without explanation where there is no clear error); ECF No. 67.

## II. South Carolina Wage Claim

Having recommended summary judgment be granted as to all of Plaintiff's federal law claims, the Magistrate Judge recommended remanding Plaintiff's state law claim for violation of the SCPWA.  ECF No. 66 at pp. 35–36.  Defendant objects to this recommendation, arguing the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy" counsel in favor of this Court exercising

supplemental jurisdiction. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). This Court overrules Defendant's objection and declines to exercise supplemental jurisdiction. In making this decision, the Court has considered "convenience and fairness to the parties, the existence of underlying issues of federal policies, comity, and considerations of judicial economy." *See id.* The Court finds that there are no remaining underlying issues of federal policy and judicial economy will not be served by keeping this action in federal court. *See id*. ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). As such, Plaintiff's SCPWA claim is remanded to the Horry County Court of Common Pleas for further proceedings.

## Conclusion[18]

Based on the foregoing, this Court **OVERRULES** Plaintiff's objections [ECF No. 67], **ADOPTS** the Magistrate Judge's R&R [ECF No. 66], and **GRANTS** Defendant's motion for summary judgment [ECF No. 51] as to Plaintiff's federal claims. This Court **OVERRULES** Defendant's objections [ECF No. 69] and **DECLINES** to retain jurisdiction over Plaintiff's remaining state law claim. Thus, this Court **REMANDS** Plaintiff's state law claim to the Horry

---

[18] To the extent Plaintiff's general objections that (1) the R&R failed to present the facts in the light most favorable to Plaintiff and (2) there are genuine issues of material facts can be construed as apply to anything outside of the objections that have already been addressed in this Order, such objections are not specific objections to the R&R and are overruled as such. *Orpiano*, 687 F.2d at 47 (noting a court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error" in the R&R).

County Court of Common Pleas for further proceedings.

    **IT IS SO ORDERED.**

| | |
|---|---|
| Florence, South Carolina | s/ R. Bryan Harwell |
| March 22, 2023 | R. Bryan Harwell |
| | Chief United States District Judge |